IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VIOLET L. GOODWIN, | ) | 8:10CV423 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CREIGHTON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 15.) As set forth below, the Motion is granted.

## I. BACKGROUND

Plaintiff Violet L. Goodwin ("Goodwin") filed her Complaint in this matter on October 29, 2010, against Creighton University. (Filing No. 1.) On December 1, 2010, the court conducted an initial review and permitted Goodwin's Complaint to proceed to service. (Filing No. 6.) Liberally construed, Goodwin alleges that Defendant denied her admission to law school because of her race in violation of Title VI of the Civil Rights Act. (Filing No. 1 at CM/ECF p. 2.) Goodwin asserts that her "score/GPA - Bachelor's Degree [are] as good as anybody's," and that Defendant used a "quota system" to deny her admission. (*Id*. at CM/ECF pp. 2, 4.) Goodwin seeks an injunction and $10,000,000.00 in monetary damages. (*Id*. at CM/ECF p. 4.)

On February 25, 2011, Defendant filed a Motion for Summary Judgment along with an Index of Evidence and Brief in Support. (Filing Nos. 15, 16 and 17.) Goodwin has filed a "Brief in Traverse" to Defendant's Motion. (Filing No. 18.) The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine

issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Defendant submitted a statement of material facts in accordance with the court's Local Rules and evidence properly authenticated by affidavit. Goodwin failed to submit a "concise response" to Defendant's statement of material facts. Instead, Goodwin submitted a Brief arguing that Defendant's evidence contains numbers that "prove nothing." (Filing No. 18 at CM/ECF p. 2.) This matter is deemed fully submitted and the material facts set forth in Defendant's Brief are "considered admitted" and adopted below.

## II. RELEVANT UNDISPUTED FACTS

1. Defendant Creighton University is a private Jesuit University comprised of nine schools and colleges, located in Omaha, Nebraska.

2. Defendant's law school begins reviewing completed law school applications in December of each year. Applications are reviewed on an ongoing basis, and applicants are notified of admissions decisions on a rolling basis.

3. The law school's faculty establishes admissions criteria. However, an admissions committee, which includes six law school faculty members and two

assistant deans, administers admissions.

4. Law school applicants are required to submit to the Admissions Office (a) a completed law school application, (b) at least two letters of recommendation, (c) a personal statement and resume, and (d) the Law School Admissions Council's ("LSAC") Credential Assembly Service Report ("LSAC Report"). The LSAC Report summarizes each applicant's undergraduate, graduate and professional school transcripts, converts each applicant's commutative grade point average ("GPA") to a standard system, and provides each applicant's writing sample and Law School Admissions Test ("LSAT") score(s).

5. The LSAC Report also includes what is known as the LSAC index score. Defendant's law school uses the LSAC index score to predict the applicant's future law school GPA.

6. During the time period in question, the law school's admissions process was as described in paragraphs 7-12, below.

7. Two assistant deans of admission, Ms. Olson ("Olson") and Ms. Bashara ("Bashara"), separately review all received applications. Olson and Bashara use two objective academic criteria, the applicant's LSAC index score and the applicant's LSAT score, on a "Standard Admissions Chart" to sort applications. Olson and Bashara do not consider an applicant's race, national origin, religion, gender, disability, sexual orientation, marital status or age in sorting the applications.

8. Using the Standard Admissions Chart, Olson and Bashara designate applicants as either "Presumptive Admit," "Committee," "Hold" or "Presumptive Deny." Applicants classified as "Presumptive Admit" are either automatically admitted or referred to the admissions committee for further consideration. Applicants classified as "Committee" are referred to the admissions committee for

further consideration. Applicants classified as "Hold" are referred to the admissions committee for further consideration. Finally, applicants classified as "Presumptive Deny" are either automatically denied admission or referred to the admissions committee for further consideration.

9. If an applicant is referred to the admissions committee, the committee reconsiders that applicant's academic criteria. The committee also takes into consideration other factors which may have an impact on admissions decisions such as: the type of undergraduate courses completed, grade patterns, extracurricular and community activities, honors, work experience, military achievements, graduate studies, and adjustment to individual hardship. The admissions committee also closely considers each applicant's writing sample, character and fitness disclosure, personal statement and letters of recommendation.

10. After considering the objective and subjective qualities of each applicant, the committee admits, denies or places applicants on a waitlist for admission. All decisions regarding acceptance, denial or waitlist are sent to each applicant in hard-copy format via U.S. mail.

11. The law school admissions criteria does not include race, national origin, religion, gender, disability, sexual orientation, marital status or age. Furthermore, the law school does not apply any race-based quotas, targets or goals during the admission process.

12. The law school admissions office received Goodwin's law school application on March 1, 2010.

13. On June 25, 2010, Goodwin submitted her LSAC Report, which contained the official report of her LSAT score, her uniformly-calculated cumulative GPA and her LSAC index score. The law school admissions office also received

Goodwin's letters of recommendation and a copy of Goodwin's writing sample through the LSAC's Credential Assembly Service. Pursuant to the law school's admissions procedure, Olson independently reviewed Goodwin's application and supporting documentation to classify it in accordance with the categories outlined in the Standard Admissions Chart.

14. Goodwin scored a 136 on her LSAT, giving her an LSAC index score of 1.9. Because her index score was less than 1.99 and her LSAT score was less than l48, Olson classified her as a "Presumptive Deny." Olson did not consider Goodwin's race, national origin or gender in classifying her as a "Presumptive Deny."

15. Olsen did not refer Goodwin's application to the admissions committee for further review. Olson made this decision because Goodwin's LSAT score was l2 points lower than the threshold for the "Presumptive Deny" classification, and her LSAC index score was low. In Olson's judgment, Goodwin's LSAT score and LSAC were insufficient to admit Goodwin as part of the 2010-2011 class. Olson did not consider Goodwin's race, national origin or gender as factors in denying her admission, nor did Olson apply a quota system to "flag" Goodwin's application.

16. Defendant maintains an electronic database of admitted student LSAT scores. Since 2003, no student has been admitted to Defendant's full-time or part-time law school program with an LSAT score of 136.

17. Among the students accepted to the law school for the 2010-2011 school year, the lowest LSAT score was a 145 and the lowest LSAC index score was a 2.00. The admitted student with a 145 LSAT score had a 2.20 LSAC index score. The admitted student with a 2.00 LSAC index score had a 159 LSAT score. No other applicant was admitted with Goodwin's scores.

18.     Goodwin was informed of her denial of admission in a letter dated July 7, 2010.

(Filing No. 16-2 at CM/ECF pp. 1-8; Filing No. 16-7; Filing No. 16-9.)

### III.     ANALYSIS

#### A.     Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

**B. Defendant's Motion for Summary Judgment**

Goodwin has alleged a discrimination claim under Title VI of the Civil Rights Act. (Filing No. 1 at CM/ECF p. 1.) In Defendant's Motion for Summary Judgment and supporting Brief, Defendant argues, among other things, that summary judgment should be granted against Goodwin because she has failed to establish a prima facie case of Title VI discrimination. (Filing No. 17 at CM/ECF pp. 13-18.) The court agrees.

Pursuant to Title VI, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Although Title VI does not mention a private right of action, [the Supreme Court's] decisions have found an implied right of action." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002); *see also Fuller v. Rayburn*, 161 F.3d 516, 518 (8th Cir. 1998) (concluding "Title VI generally permits recovery of damages for intentional discrimination"). To establish a prima facie case under Title VI, a plaintiff must demonstrate that her race, color, or national origin was the motive for the discriminatory conduct. *Thompson v. Bd. of Special Sch. Dist. No. 1*, 144 F.3d 574, 578-79 (8th Cir. 1998).

Here, Goodwin alleges that her "score/GPA - Bachelor's Degree [are] as good as anybody's," and that Defendant's law school used a "quota system" to deny her admission. (Filing No. 1 at CM/ECF pp. 2-4.) However, the evidence establishes that Defendant's law school denied Goodwin's application because her academic credentials were insufficient. Goodwin's 136 LSAT score and 1.9 LSAC index score placed her in the "Presumptive Deny" category of applicants. (Filing No. 16-2 at CM/ECF pp. 6-7; Filing No. 16-7.) Because Goodwin's scores were very low, the assistant dean of admissions did not refer Goodwin's application to the admissions committee for further review. (Filing No. 16-2 at CM/ECF p. 7.) Indeed, Goodwin

had lower LSAT and LSAC index scores than any student offered admission to Defendant's law school for the 2010-2011 academic year. (*Id*.; Filing No. 16-9.) Moreover, even if Goodwin were academically qualified for admission, which she was not, the evidence shows that Defendant's admissions process does not use race or national origin as factors to deny admission. (Filing No. 16-2 at CM/ECF pp. 5, 7.)

In short, Goodwin has offered no evidence to support her allegation that she was denied admission to Defendant's law school on the basis of her race or national origin. See *Moody*, 23 F.3d at 1412 (stating a nonmoving party must substantiate their allegations with sufficient probative evidence that would permit a finding in their favor on more than mere speculation, conjecture, or fantasy). In light of this, the court concludes that Goodwin has failed to establish a prima facie case of discrimination under Title VI.

IT IS THEREFORE ORDERED that:

1. Defendant's Motion for Summary Judgment (filing no. 15) is granted and Goodwin's claims against Defendant are dismissed with prejudice.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 8th day of July, 2011.

                BY THE COURT:

                *Richard G. Kopf*
                United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.